UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM J. LAUGHLIN and JODI MARIE DARNLEY, individually and on behalf of all similarly situated individuals, | )<br>)  CIVIL ACTION NUMBER:<br>)<br>)<br>) |
| Plaintiffs, | ) |
| vs. | ) |
| NVR, INC. and NVR MORTGAGE FINANCE, INC. | )  Demand for Jury Trial<br>) |
| Defendants. | )  Electronically filed |

## CLASS ACTION COMPLAINT

### I. INTRODUCTION

1. This class action is brought on behalf of residential mortgage borrowers who purchased a home from NVR, Inc. ("NVR") and received a mortgage loan for such purchase that was originated, processed and/or brokered by NVR Mortgage, Inc. ("NVR Mortgage"), wherein the borrower(s) were required by the literal terms of their real estate purchase agreement with NVR to finance their purchase through NVR Mortgage, or else forfeit various discounts off of the purchase price and/or closing costs for their new home. NVR Mortgage is a wholly-owned subsidiary of NVR and for this reason, among others, their relationship constitutes an "affiliated business arrangement" within the meaning of Section 8(c) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(c). Affiliated business arrangements are exempt from RESPA's prohibition against kickbacks and unearned fees only if, *inter alia*, there is no requirement that the borrower use a particular settlement service provider. By requiring home

1

buyers to finance their purchase through NVR Mortgage, under the direct threat of having to otherwise pay more money for their new home, Defendants have failed to comply with the statutory prerequisites for exemption as an affiliated business arrangement and, consequently, have violated RESPA's prohibition against kickbacks and unearned fees.

2. Defendants have engaged in a uniform, systematic pattern and practice of requiring the use of NVR Mortgage for the financing of home purchases from NVR, in violation of Section 8 of RESPA.

## II. THE PARTIES

3. Plaintiff William J. Laughlin is an adult individual who resides at 1156 Camarta Drive, Pittsburgh, Pennsylvania.

4. Plaintiff Jodi Marie Darnley is an adult individual who resides at 1156 Camarta Drive, Pittsburgh, Pennsylvania.

5. Defendant, NVR, Inc., is, upon information and belief, a Virginia corporation with its headquarters at Plaza America Tower I, 11700 Plaza America Drive, Suite 500, Reston, Virginia 20190. NVR, Inc. builds and sells homes under four brand names: Ryan Homes; NV Homes; Fox Ridge Homes; and Rymarc Homes.

6. Defendant, NVR Mortgage Finance, Inc., is, upon information and belief, a wholly-owned subsidiary of NVR, Inc. with its headquarters at Plaza America Tower I, 11700 Plaza America Dive, Suite 500, Reston, Virginia 20190.

## III. JURISDICTION AND VENUE

7. Plaintiff seeks relief under RESPA and, therefore, federal question jurisdiction is appropriate pursuant to 28 U.S.C. § 1331.

8. Personal jurisdiction and venue in this district are proper under 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district, in that the real property involved in Plaintiffs' mortgage loan transaction is located in this district.

## IV. BACKGROUND

### RESPA – An Overview

9. In the early 1970's, Congress became concerned about predatory lending practices in the housing industry, and in 1974 enacted a remedial consumer protection statute, RESPA, "to ensure that consumers throughout the Nation are...protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a).

10. As Congress has indicated, the purpose of RESPA is, *inter alia,* "to effect certain changes in the settlement process for residential real estate that will result ...in the elimination of...fees that tend to increase unnecessarily the costs of certain settlement services." 12 U.S.C. § 2601(a) & (b).

11. Congress' desire to eliminate excessive settlement fees is manifested in Section 8 of RESPA, which prohibits kickbacks and fee-splits related to real estate settlement services:

> §2607 Prohibition against Kickbacks and Unearned Fees
>
> (a) Business referrals. No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.
>
> (b) Splitting Charges. No person shall give and no person shall accept any portion, split, or percentage of any charge

3

>made or received for the rendering of a real estate
>settlement service in connection with a transaction
>involving a federally related mortgage loan other than for
>services actually performed.

12. The United States Department of Housing and Urban Development ("HUD") has issued implementing regulations for RESPA ("Regulation X") which define "settlement service" as "any service provided in connection with a prospective or actual settlement" and specifically include within such definition the "[o]rigination of a federally related mortgage loan (including, but not limited to, the taking of loan applications, loan processing, and the underwriting and funding of such loans)." Regulation X, 24 C.F.R. § 3500.2.

13. In a 1983 amendment to RESPA, Congress provided an exemption from Section 8 liability for "affiliated business arrangements,"[1] defined as "an arrangement in which (A) a person who is in a position to refer business incident to or a part of a real estate settlement service involving a federally related mortgage loan, or an associate of such person, has either an affiliate relationship with or a direct or beneficial ownership interest or more than 1 percent in a provider of settlement services; and (B) either of such persons directly or indirectly refers such business to that provider or affirmatively influences the selection of that provider." 12 U.S.C. § 2602(7).

---

[1] The 1983 amendment originally referred to such arrangements as "controlled business arrangements." However, in 1996, RESPA was amended to change all of the "controlled business" references to "affiliated business." That same year, RESPA's implementing regulations (Regulation X) were similarly amended. Accordingly, all references herein will be to "affiliated business arrangements."

4

14. The exemption provided under RESPA for affiliated business arrangements is limited, however, to arrangements which fulfill certain prerequisites: "Nothing in this [section 8] shall be construed as prohibiting . . . affiliated business arrangements <u>so long as</u> (A) a disclosure is made of the existence of such an arrangement to the person being referred . . ., (B) such person <u>is not required to use</u> any particular provider of settlement services, and (C) the only thing of value that is received from the arrangement , other than the payments permitted under this subsection, is a return on the ownership interest or franchise relationship. . . ." 12 U.S.C. § 2607(c)(emphasis added).

15. The legislative history of the 1983 amendments makes clear that, by imposing a prerequisite for exemption that the borrower not be "required" to use any particular settlement service provider, Congress intended to make certain that the exemption for affiliated business arrangements did not extend to situations where inappropriate "tying" of settlement services was occurring: "The Committee bill also included a strong anti-tying provision. A person being referred to a controlled business in a RESPA covered transaction may not be required to use a particular provider. . . ." H.R. Rep. No. 98-123, 98th Cong., 1st Sess. at p. 76 (1983).

16. HUD's implementing regulations for RESPA define "required use," in the context of the affiliated business arrangement exemption, as meaning "a situation in which a person must use a particular provider of a settlement service in order to have access to some distinct service or property, and the person will pay for the settlement service of the particular provider or will pay a charge attributable, in whole or part, to the settlement service. . . ." Regulation X, 24 C.F.R. § 3500.2.

17. In the Supplementary Information to the Proposed Rule leading to the adoption of the "required use" definition in Regulation X, HUD explained that it "takes a broad view of

5

"required use" as covering any situation where the use of a particular provider for a settlement service is a condition of the availability of some other distinct service or property (including situations where the other service or property will otherwise still be available but at a different price)." 53 Fed. Reg. 17424,17426 (proposed May 16, 1988).

18. Subsequent to the adoption of the "required use" definition in Regulation X, HUD issued an Informal Opinion which applied such definition in the context of a real estate developer charging a buyer more money if the buyer elected not to use the title insurance company suggested by the developer. In concluding such an arrangement violated RESPA's Section 9 prohibition against a seller requiring the use of a particular title insurance company, HUD explained that "[a] requirement that the buyer pay additional fees if it chooses a title insurance company other than the one selected by the developer effectively requires that the purchaser use a particular insurance company in contravention of RESPA." HUD Informal Opinion No. 29 (December 17, 1997), *Barron's Federal Regulation of Real Estate and Mortgage Lending*.

**Defendants' Violation of RESPA**

19. On or about July 15, 2006, Plaintiffs entered into a Pennsylvania Purchase Agreement ("Purchase Agreement") with NVR, pursuant to which Plaintiffs agreed to purchase a new home from NVR, located in its "Estates of Breckenridge" community, in Allegheny County, Pennsylvania. A copy of the Purchase Agreement is attached hereto as Exhibit 1.

20. On or about July 20, 2006, Plaintiffs were given a Good Faith Estimate Addendum/Affiliated Business Arrangement Disclosure ("ABA Disclosure") which explained that NVR Mortgage was a wholly-owned subsidiary of NVR. A copy of the ABA Disclosure is attached hereto as Exhibit 2

6

21. Paragraph 2 of the Purchase Agreement provided that the sales price for the Plaintiffs' new home was $255,000.00.

22. Paragraph 10(b) of the Purchase Agreement provided that "should Purchaser select NVR Mortgage Finance, Inc. for mortgage financing Seller shall pay the Closing Costs or other incentives listed below, at Settlement." The list of "closing costs or other incentives" set forth in Paragraph 10(b) of the Purchase Agreement totaled approximately $23,903.00. Paragraph 10(c) however, further provided that "[i]n the event Purchaser elects to use a mortgage broker other than NVR Mortgage Finance, Inc., Seller's cash incentives and/or closing cost contribution listed in Paragraph 10(b) shall be reduced by $18,903.00 . . . In such event, the Purchase Price as defined in Paragraph 2 shall be increased from $255,000.00 to $268,325.00."

23. As a direct result of the requirement placed upon them by NVR to either use NVR Mortgage for their financing or pay an additional $18,903.00 in order to purchase their home, Plaintiffs financed their purchase through NVR Mortgage.

24. Defendants' affiliation and conduct with regard to Plaintiffs' home purchase meets the definition of an "affiliated business arrangement" under RESPA. Specifically, NVR: 1) was a "person who is in a position to refer business incident to or a part of a real estate settlement service"; 2) had an "affiliate relationship with or a direct or beneficial ownership interest or more than 1 percent in" NVR Mortgage; and 3) "directly or indirectly refer[ed] such business" to and/or "affirmatively influence[d] the selection of" NVR Mortgage. 12 U.S.C. § 2602(7).

25. By "requiring" the use of NVR Mortgage, under the threat of charging buyers thousands of dollars more for their homes, Defendants, however, fail to meet the prerequisites for the affiliated business arrangement exemption. 12 U.S.C. § 2607(c).

26. Defendants' qualification as an affiliated business arrangement and failure to fulfill the prerequisites for exemption of such an arrangement results in a per se violation of Section 8 of RESPA.

27. Even if Defendants' arrangement does not constitute a per se violation of Section 8 of RESPA, Defendants' arrangement nevertheless results in a Section 8 violation of RESPA, because Defendants' arrangement meets all elements of liability under Section 8(a) and/or Section 8(b) of RESPA.

**Plaintiffs have Standing to Sue**

28. Section 8(d)(2) of RESPA provides that "Any person or persons who violate the prohibitions or limitations of this Section shall be jointly and severally liable to the person or persons charged for the settlement service involved in the violation in an amount equal to three times the amount of any charge paid for such settlement service." Section 8(d)(2) was amended in 1983, concurrently with the amendments pertaining to affiliated business arrangements, to specifically provide for statutory damages for violations of Section 8 of RESPA, in specific recognition of the fact that affiliated business arrangements often-times do not involve the <u>direct</u> payment of illegal referral fees (which had been the basis for damages prior to 1983). *Kahrer v. Ameriquest Mortgage Co.,* 418 F.Supp.2d 748 (W.D. Pa. 2006)(Standish, J./Hay, M.J.).

29. Plaintiffs and the class have standing to sue pursuant to Section 8(d)(2) because they have been the direct victims of Congress' prohibition against illegal referral payments for the obtainment of, and/or unearned fees related to, real estate settlement services involving a federally related mortgage loan. Plaintiffs' claim is consistent with Congress' stated purpose of RESPA, i.e., to eliminate "certain abusive practices" which may, ultimately, result in "unnecessarily high settlement charges." 12 U.S.C. §2601(a).

## V.   CLASS ACTION ALLEGATIONS

30.   This is a class action filed on behalf of all residential mortgage borrowers, nationally, who, within one year of the filing of this Class Action Complaint, purchased a home from NVR and received a mortgage loan for such purchase that was originated, processed and/or brokered by NVR Mortgage, wherein the borrower(s) were required by the literal terms of their real estate purchase agreement with NVR to finance their purchase through NVR Mortgage, or else forfeit various discounts off of the purchase price and/or closing costs for their new home. Upon information and belief, the scope of this class definition, including its temporal scope, may be further refined after discovery of Defendants' books and records.

31.   The identities of the class borrowers are readily identifiable through computer records and paper records, regularly maintained in Defendants' course of business.

32.   The class is so numerous as to make it impracticable to bring all members of the class before the Court. It is believed, based upon Defendants' representations in public records, that the class includes thousands of members. In some instances, such persons may be unaware that claims exist on their behalf. To the extent that class members have knowledge of their claims, their damages are in such amounts that when taken individually, they may be too small to justify the expense of a separate lawsuit.

33.   The representative Plaintiffs' claims are typical of, if not identical to, the claims of the class. Plaintiffs were required by NVR to finance their home purchase through NVR Mortgage, in violation of the exemption prerequisites for affiliated business arrangements, thereby resulting in a violation of Section 8 of RESPA.

34.   The representative Plaintiffs will fairly and adequately represent the members of the class and have no interests which are antagonistic to the claims of the class. The Plaintiffs

are aware that they cannot settle this action without Court approval. The Plaintiffs' interest in this action is antagonistic to the interests of Defendant, and they will vigorously pursue the claims of the class.

35. The representative Plaintiffs have retained counsel who are competent and experienced in consumer finance class action litigation, and have successfully represented consumers in complex class actions. Counsel have agreed to handle this case on a contingent basis, with their compensation for professional services only as awarded by the Court.

36. Common questions of law and fact impact the rights of each member of the class and a common remedy by way of permissible damages and declaratory relief is sought for the class.

37. There are numerous and substantial questions of law and fact common to all members of the class which will control in this litigation and which will predominate over any so-called individual issues. These common questions of law and fact include:

   A. Did NVR require its customers to finance their home purchases through its wholly-owned subsidiary, NVR Mortgage, within the meaning and in violation of Section 8 of RESPA?

   B. Does the relationship between NVR and NVR Mortgage constitute an "affiliated business arrangement" within the meaning of RESPA?

   C. Did Defendants' affiliated business arrangement fail to meet the prerequisites for exemption from liability under Section 8 of RESPA?

   D. Did Defendants engage in an illegal referral scheme, in violation of Section 8(a) of RESPA?

   E. Did Defendants accept an unearned fee in violation of Section 8(b) of RESPA?

   F. Does Defendants' failure to meet the requirements for exemption as an affiliated business arrangement automatically result in a violation of Section 8 of RESPA?

   G. What measure of damages is appropriate?

H. What declaratory or injunctive relief is appropriate?

38. A class action provides a fair and efficient method, if not the only method, for adjudicating this controversy. The substantive claims of the representative Plaintiff and the class are identical and will require evidentiary proof of the same kind and application of the same law.

39. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because class members number in the thousands and individual joinder is impracticable. The expense and burden of individual litigation would make it impracticable or impossible for proposed class members to prosecute their claims individually. Trial of Plaintiffs' claims is manageable. Unless a class is certified, Defendants will retain excessive and unearned fees improperly accepted from class members.

40. Unless a class-wide injunction is issued, Defendants may continue to commit violations against residential mortgage borrowers.

41. The representative Plaintiffs will seek to identify all class members through discovery as may be appropriate and will provide to the class such notice of this action as the Court may direct.

**COUNT I -- VIOLATION OF RESPA (SECTION 8(a))**

42. The other paragraphs of this complaint are hereby incorporated as if set forth in their entirety.

43. The loans of Plaintiffs and the class were "federally related mortgage loans" within the meaning of RESPA. 12 U.S.C. § 2602(1).

44.     Defendants violated RESPA, Section 8(a), 12 U.S.C. §2607(a), and related federal regulations and interpretations by giving and/or accepting a fee, kickback, or thing of value in exchange for the referral of real estate settlement services.

45.     Plaintiffs and other class members are persons "charged for the settlement service involved in the violation", and Plaintiffs and other class members are entitled to damages from Defendant "in an amount equal to three times the amount of any charge paid for such settlement services." RESPA Section 8(d)(2), 12 U.S.C. § 2607(d)(2).

### COUNT II – VIOLATION OF RESPA (SECTION 8(b))

46.     The other paragraphs of this complaint are hereby incorporated as if set forth in their entirety.

47.     The loans of Plaintiffs and the class were "federally related mortgage loans" within the meaning of RESPA. 12 U.S.C. § 2602(1).

48.     Defendants violated RESPA, Section 8(b), 12 U.S.C. § 2607(b), and related federal regulations and interpretations by accepting and/or giving a charge made or received for a real estate settlement service other than for services actually rendered.

49.     Plaintiffs and other class members are persons "charged for the settlement service involved in the violation", and Plaintiffs and other class members are entitled to damages from Defendant "in an amount equal to three times the amount of any charge paid for such settlement services." RESPA Section 8(d)(2), 12 U.S.C. § 2607(d)(2).

12

**WHEREFORE**, on all asserted causes of action against Defendants, Plaintiffs and the class respectfully request judgment against Defendants as follows:

A. For an Order certifying this action may be maintained as a class action, as above defined, under Fed. R. Civ. P. 23(a) and 23(b)(3);

B. For an Order appointing Plaintiffs as representatives of the class;

C. For an Order appointing the undersigned counsel as class counsel pursuant to Fed. R. Civ. P. 23;

D. For an Order directing that reasonable notice of the class action be provided to all members of the class at the appropriate time after discovery and dispositive motions have been resolved;

E. For violating RESPA, an Order and Judgment finding that the Defendants are liable as a matter of law to each member of the class for treble damages;

F. For declaratory and injunctive relief as permitted by law or equity, including Enjoining Defendants from continuing the unlawful practices as set forth herein.

H. For reasonable attorneys' fees as provided by law and statute;

I. For pre-and-post judgment interest as provided by law in an amount according to proof at trial;

J. For an award of costs and expenses incurred in this action;

K. For such other relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

 Plaintiff demands trial by jury on all issues so triable.

Dated:  April 16, 2007

                Respectfully submitted,


                /s/ R. Bruce Carlson
                R. Bruce Carlson
                bcarslon@carlsonlynch.com
                PA56617
                231 Melville Lane
                PO Box 367
                Sewickley, PA  15143
                412-749-1677(p)
                412-749-7686(f)